IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


KIMBERLEY ANNE CEJA JOHNSON,                    Case No. 6:11-cv-6372-AA

          Plaintiff,                            OPINION AND ORDER

     v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.
_____

Juliana E. Coons
440 E. Broadway, Suite 140
Eugene, OR 97401
     Attorney for plaintiff

S. Amanda Marshall
United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

Gerald J. Hill
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Ave., Ste. 2900 M/S 221A
Seattle, WA 98104-7075
     Attorneys for defendant


1    - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the defendant Commissioner of Social Security denying plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, the Commissioner's decision is affirmed.

### BACKGROUND

On February 7, 2008, plaintiff filed an application for DIB and was denied initially and on reconsideration. Tr. 55-58, 62-64 94-103. Plaintiff requested a hearing before an administrative law judge ("ALJ") and on April 13, 2010, plaintiff and a vocational expert ("VE") testified before the ALJ. Tr. 36-52, 66-67. On June 11, 2010, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act. Tr. 27-35.

On May 19, 2011, plaintiff requested the Appeals Council review the ALJ's decision and the Appeals Council denied the request. Tr. 12-15. Following this denial, plaintiff submitted additional medical evidence and again requested review by the Appeals Council; the Appeals Council reviewed the medical records and denied her second request for review, confirming the ALJ's decision as the final agency decision. Tr. 3-6, 10-11. Plaintiff now seeks judicial review. 42 U.S.C. § 405(g).

Plaintiff was forty-nine years old at the time of the ALJ's decision, with a high-school education and past relevant work ("PRW") as a retail deli worker. Tr. 40-41. Plaintiff alleges disability since March 31, 2002, claiming initially that her

2    - OPINION AND ORDER

disability was a result of osteoarthritis and osteopenia.[1]  Tr. 32, 160.  In her requests for review, plaintiff asserts that the ALJ failed to consider her morbid obesity, as well as her chronic fatigue syndrome ("CFS") and fibromyalgia.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  The court must weigh "both the evidence that supports and detracts from the [Commissioner]'s conclusions."  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  Where the evidence "is susceptible to more than one rational interpretation," the Commissioner's conclusion must be upheld.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability.  Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, plaintiff must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

---

[1] Plaintiff's Disability Report lists September 2004 as the date that her illness/injury first interfered with her ability to work, March 2002 as the time she became unable to work due to her illness/injury, and June 2003 as the last time she worked.  Tr. 160.

can be expected . . . to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Further, plaintiff must establish this disability prior to her date last insured ("DLI") in order to qualify for DIB. 42 U.S.C. § 423(a)(1)(A)-(D); See Morgan v. Sullivan, 945 F.2d 1079, 1080 (9th Cir. 1991) (explaining DLI, generally).

A five-step sequential process exists for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity ("SGA") during the period of alleged disability. Tr. 32; 20 C.F.R. § 404.1520(b).

At steps two and three, the ALJ found that plaintiff had severe impairments of osteoarthritis and osteopenia, but that plaintiff's impairments did not meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude gainful activity." Tr. 32; Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c),(d). The ALJ considered plaintiff's obesity, but concluded that it did not cause "marked functional limitations." Tr. 34. The ALJ did not find the plaintiff's testimony regarding her severe pain or fatigue entirely credible. Tr. 33-34; 20 C.F.R. § 404.1529.

The ALJ next found that plaintiff retained the residual functional capacity ("RFC") to perform "the full range of light work," in that she could lift and/or carry up to twenty pounds, frequently lift up to ten pounds, and walk or stand throughout her workday. Absent any additional limitations, the full range of light work also includes the ability to do sedentary work. Tr. 32; 20

4    - OPINION AND ORDER

C.F.R. §§ 404.1520(e), 404.1567(b).

At step four, the ALJ found plaintiff capable of performing her PRW as a deli worker, after considering the RFC assessment of the state medical consultants and the testimony of the VE in addition to his own review of the medical evidence. Tr. 34, 49, 273-280; 20 C.F.R. § 404.1520(f). Thus, the ALJ did not proceed to step five, where the burden shifts to the Commissioner to show that a claimant can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(g).

## DISCUSSION

Plaintiff argues that the ALJ erred at step two of the sequential process by failing to consider all of plaintiff's severe impairments, including her obesity, CFS, and fibromyalgia. Plaintiff claims that as a result of these omissions, the ALJ failed to find that her combination of impairments equaled a listing as provided by 20 C.F.R. § 404.1520. Plaintiff also contests the ALJ's finding that she has the RFC to perform PRW and maintains that her impairments preclude her from sustaining SGA at either the light or sedentary levels.

Plaintiff argues that if her fibromyalgia, CFS, and morbid obesity are included as severe impairments, and her subjective pain complaints are credited as true, she has established disability within the meaning of the Act. Alternatively, plaintiff argues that outstanding issues remain and require remand for further proceedings. Defendant counters that the medical evidence does not reveal that plaintiff had CFS or fibromyalgia prior to her DLI of March 31, 2008. Morgan, 945 F.2d at 1080 (explanation of DLI). Therefore, defendant argues, the ALJ did not err in his

5    - OPINION AND ORDER

determination of plaintiff's impairments nor did the Appeals Council err in finding that the subsequent medical evidence was not relevant to plaintiff's disability determination.

A. Step Two Determinations

At step two, the ALJ found that plaintiff's severe impairments were limited to osteoarthritis and osteopenia. Plaintiff argues that fibromyalgia and CFS, diagnosed after her DLI, as well as morbid obesity, should have been included in the ALJ's assessment. The ALJ did not find any medical evidence that supported the inclusion of fibromyalgia or CFS as severe impairments prior to plaintiff's DLI. Further, the ALJ considered plaintiff's morbid obesity and found that it did not result in work limitations; thus, the ALJ did not consider plaintiff's obesity to be a severe impairment. Tr. 34.

A severe impairment cannot be established on the basis of symptoms alone; it must be supported by a medical diagnosis. Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005); 20 C.F.R. § 404.1508. At the same time, "[a]n impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks and citations omitted). "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims,' and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Smolen, 80 F.3d at 1290 and S.S.R. 85-28). If the

6    - OPINION AND ORDER

medical evidence is ambiguous or inadequate, the ALJ has a duty to develop the record. <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001).

Regardless, it is the claimant's burden, not the ALJ's, to prove that the claimant is disabled. <u>See, e.g.</u>, <u>Clem v. Sullivan</u>, 894 F.2d 328, 330 (9th Cir. 1990); 20 C.F.R. § 404.1512(a) ("We will consider only impairment(s) you say you have or about which we receive evidence"); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled.").

Here, the record reflects no medical evidence for the period beginning with plaintiff's alleged onset date ("AOD") of March 31, 2002, through December 2005; the earliest medical records are from December 9, 2005, almost four years after plaintiff's AOD. Tr. 33, 231. Further, the medical evidence of record fails to support plaintiff's argument that fibromyalgia and CFS should have been included in the ALJ's step two determination.

The ALJ reviewed plaintiff's medical record available through the date of the administrative hearing, as it related to the period of plaintiff's alleged disability.[2] Tr. 32-34. He noted that her medical record showed "mild osteoarthritis of the knees and hips," normal bone density, and no "significant abnormalities" with her lumbar spine. Tr. 33-34, 293-296, 335, 336. The ALJ commented that plaintiff had reported knee pain, but "it was not severe," and that she felt better and had more energy after losing weight. Tr. 33-34,

---

[2]The ALJ's findings show that he considered plaintiff's medical record, including dates after her DLI, as required to develop the record related to plaintiff's disability claim. Tr. 33-34.

7    - OPINION AND ORDER

294, 298. The ALJ found no medical evidence to support plaintiff's claims of severe fatigue or that plaintiff reported severe fatigue to her treating physicians. Tr. 34.

Plaintiff does not contest the lack of medical evidence prior to her DLI. Pl.'s Mem. at 3. Instead, plaintiff claims that the Appeals Council "ignored the evidence that [she] had finally been diagnosed with fibromyalgia after her DLI." Id. at 4.

The Appeals Council reviewed the additional medical records submitted by plaintiff and again found no reason to review the ALJ's decision. Tr. 3. The Appeals Council will review an ALJ decision when "new and material evidence is submitted." 20 C.F.R. § 404.970(c). The Appeals Council found that the new evidence did not relate to the period through plaintiff's DLI and as a result did not affect the ALJ's decision. Tr. 4. Because this evidence was not submitted to the ALJ, the proper remedy is remand to the Commissioner to consider this evidence, if it is "new and material." See 42 U.S.C. § 405(g) (sentence six remand); Akopyan v. Barnhart, 296 F.3d 852, 854 (9th Cir. 2002) (sentence six remand appropriate "where new, material evidence is adduced that was for good cause not presented before the agency"); Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001).

Here, the evidence is not material, because it does not pertain to the relevant period of disability. The additional evidence that plaintiff submitted pertained to the period from April 2009 through August 2010, beginning more than a year after her DLI. In addition, the ALJ considered the opinions of the state agency's medical consultants, which supported the evidence in the medical record. In March 2008, Dr. Lahr examined plaintiff's

medical record and agreed that plaintiff's symptoms were attributable to the medically determinable impairments of osteoarthritis and osteopenia. Tr. 280.

Given the lack of medical evidence supporting diagnoses of CFS or fibromyalgia prior to plaintiff's DLI, I find no error with the ALJ's step two determination. Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002).

Moreover, an error at step two is nonetheless harmless if the ALJ considered the effects of impairments deemed non-severe in assessing a claimant's RFC. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); see also 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity."). The ALJ is required to consider plaintiff's medically determinable impairments and I find that he did.

The ALJ acknowledged plaintiff's morbid obesity, finding that "her response to treatment has been positive even in its presence." Tr. 34. The ALJ noted, "[w]hile [plaintiff] may experience mild to moderate pain, she reported that Mobic helped, as did compression stockings and losing weight." Id. The ALJ discussed plaintiff's leg and back pain, finding her conditions "mild" and without "significant abnormalities." Tr. 34. The ALJ cited plaintiff's medical record, noting that plaintiff described her knee pain as "not severe" and that her pain responded to painkillers. Tr. 34, 294. The ALJ further considered plaintiff's alleged fatigue, noting that it was not reported to her treating physicians. Id.

Although the ALJ omitted plaintiff's additional alleged

9   - OPINION AND ORDER

impairments at step two, plaintiff's pain, fatigue, and obesity were later recognized by the ALJ at step four. Tr. 33-34. As discussed above, the ALJ's step two finding is supported by the record, and the ALJ nonetheless considered plaintiff's morbid obesity, pain, and fatigue at step two four.

B. Step Three Determination

Plaintiff further argues that the ALJ's failure to include her fibromyalgia, CFS, and obesity as severe impairments at step two led to an erroneous determination that plaintiff's impairments do not meet or equal a listed impairment at step three.

It is well settled that step three determinations are based on the medical evidence. See, e.g., Bates v. Barnhart, 222 F. Supp. 2d 1252, 1258 (D. Kan. 2002) (noting that "determinations at step three must be made purely on the medical evidence"). The plaintiff bears the burden of proving that her impairment or combination of impairments "meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005); 20 C.F.R. § 404.1529(d)(3) (a finding of equivalence must be based on medical evidence only); 20 C.F.R. § 404.1526 ("Medical equivalence must be based on medical findings.").

As discussed above, the medical evidence of record does not reflect a conclusive diagnosis of fibromyalgia or CFS to warrant evaluation at step three. Moreover, plaintiff fails to identify the listing that she believes she meets. See, e.g., Burch, 400 F.3d at 683 ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in

10    - OPINION AND ORDER

an effort to establish equivalence.").

Even if it was error to omit the impairments at step two, the addition of these impairments would not have affected the outcome at step three given the lack of supporting medical evidence. In addition, as both medical consultants' opinions are based on and consistent with the objective medical record, they support the ALJ's findings at step three as well. Tr. 34, 53, 54, 273-280.

C. RFC Determination

Before an ALJ can determine whether the claimant is able to perform PRW, the ALJ must first determine the claimant's RFC, which reflects the claimant's ability to perform sustained work activities in an ordinary work setting. SSR 96-8p. Here, plaintiff contests the ALJ's determination that she has the RFC to perform light work, which consists of lifting ten pounds frequently and twenty pounds occasionally, a "good deal of walking or standing," and the full range of sedentary work. 20 C.F.R. § 404.1567 (a)-(b).

1. Credibility

Plaintiff contends that the ALJ erred by discrediting her testimony and subjective complaints regarding the severity of her pain and alleged impairments. At the administrative hearing, plaintiff testified that she could stand for "[n]o more than a half hour, 45 minutes at a time" due to her need to sit with her legs elevated. Tr. 42. Plaintiff further testified that she was unable to perform sedentary work because could not sit for more than "half an hour" because her "knees ache like crazy." Id. The ALJ found plaintiff's complaints not entirely credible in light of the medical evidence, the lack of treatment for alleged impairments, and plaintiff's daily activities. Tr. 34.

11   - OPINION AND ORDER

When a plaintiff produces objective medical evidence of an impairment that reasonably could be expected to produce some degree of the alleged symptoms, "the ALJ can reject the claimant's testimony about the severity of [the] symptoms only by offering specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281; see also Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008). "At the same time, the ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

While an ALJ cannot reject the severity of subjective complaints solely on the lack of objective evidence, the ALJ may nonetheless look to the medical record for inconsistencies. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599-600 (9th Cir. 1999). Further, the ALJ may consider the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. Smolen, 80 F.3d at 1284.

Here, I find that the ALJ provided sufficient reasons to support his credibility finding. The ALJ noted that the medical evidence did not support the extent of plaintiff's limitations and plaintiff had not sought medical treatment for her alleged impairments. Tr. 33-34. As noted above, there is no medical evidence for almost four years from the time of the AOD. Tr. 33. The medical records show "generally unremarkable" examinations, "mild osteoarthritis," and "x-rays of the lumbar spine did not show significant abnormalities." Tr. 33-34. The treatment notes do not

12   - OPINION AND ORDER

reflect restrictions in plaintiff's daily activities and plaintiff reportedly performed some work activity through June 2007.[3] Tr. 34, 205.

Dr. Lahr, the state medical consultant, found the plaintiff partially credible, noting that plaintiff "alleges a high degree of pain yet the [plaintiff's SSA Function Report] show she is fairly functional." Tr. 280. Dr. Lahr further noted that plaintiff's symptoms were disproportionate with her impairments, based on plaintiff's answers regarding her own functionality, her activities of daily living, and the medical record. Tr. 278-280. In May 2008, Dr. Kehrli reviewed and affirmed Dr. Lahr's determination. Tr. 54.

The ALJ found that the medical record did not support the plaintiff's claims of disabling pain and fatigue or support her need to rest with her legs elevated throughout the day. Tr. 33-34. Further, the ALJ found nothing in plaintiff's treatment record advising plaintiff to elevate her legs constantly throughout the day. Tr. 34. He was unable to find any "medically diagnosed impairment" which would keep plaintiff homebound or prevent her from "carry[ing] on her activities of daily living."[4] Id. The ALJ could not find support in the medical record for plaintiff's claims of severe fatigue and found that the lack of treatment contradicted

---

[3]According to her medical records, on June 28, 2007, plaintiff described her employment status to Dr. Caryn Scott as "self-employed housekeeper." Tr. 205.

[4]In her SSA Function Report, plaintiff describes her activities of daily living as shopping, running errands, getting her son ready for school, preparing meals, caring for her pets, laundry and handling housework as she is able. Tr. 148-150.

plaintiff's allegations.[5] Tr. 34; see Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008). In sum, I find that the ALJ's credibility determination is supported by clear and convincing reasons and supported by evidence in the record.

## 2. Medical Evidence

Plaintiff next argues that the ALJ erred by failing to consider the effects of her morbid obesity on her osteoarthritis and osteopenia. As previously discussed, the ALJ considered plaintiff's obesity as it affected her degenerative joint disease, but found that it did not significantly affect her impairments. Tr. 34. The ALJ noted that medical records after plaintiff's DLI reflect improvements in plaintiff's weight, as noted by her treating physician. Tr. 33, 298-299. Dr. Wieckowska wrote, "[plaintiff] is doing very well... She has actually successfully lost about 9 kg. since I last saw her. She is feeling better with more energy." Id. Dr. Wieckowska added, "I anticipate [plaintiff's degenerative joint disease] will improve significantly as she looses [sic] weight." Id.

Plaintiff also contests the Appeals Council's denial of the medical evidence regarding her fibromyalgia and CFS and argues that, at a minimum, the case should be remanded for consideration of this evidence.

In April 2010, two years after plaintiff's DLI, plaintiff visited a podiatrist, who determined that plaintiff had flat feet, a bone spur, a bunion, pain under the ball of the foot, and arthritis in the middle part of the foot. Tr. 470. The podiatrist

---

[5]The ALJ noted there was "no objective reason whey [sic] claimant would have to miss too much work." Tr. 34.

noted plaintiff's primary purpose for her visit was "pain into her second right metatarsal and she has not had any recent treatment for this."[6] Tr. 438.

Plaintiff further proffers the medical opinion of Dr. Wieckowska, her primary care physician as of April 2009, who noted that during the time that she had been seeing the plaintiff, the plaintiff "has had significant debilitating pain" and that plaintiff "would not be able to maintain gainful employment." Tr. 473-474. Dr. Wieckowska concedes, however, that the plaintiff "has been applying for disability status for about the amount of time that I have been seeing her. Since that time, Mrs. Ceja Johnson has come in with multiple complaints of pain and decreased function." Tr. 473.

Plaintiff concedes this evidence was not presented to the ALJ. However, as discussed above, this evidence is not new and material so as to justify remand because it does not pertain to the period before her DLI. Moreover, I find no error in the ALJ's evaluation of the medical record at the time of the administrative hearing, as discussed above. Although plaintiff disagrees with the ALJ's review of the medical evidence, I must defer to the ALJ's interpretation if it is supported by the record. Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004).

### 3. Ability to Perform Light Work

In step four, the Commissioner determines whether the claimant

---

[6]Moreover, medical records from September 2009 indicate plaintiff's foot pain was recent: "She also has a small spot on her right foot where there is pain deep inside, worse when sh stands or walks. That has been there about two weeks and is very bothersome." Tr. 298-299.

can perform PRW, and if so, the Commissioner makes a finding that the claimant is not disabled. 20 C.F.R. § 404.1520(e). Based on his RFC determination and the testimony of the VE, the ALJ determined that plaintiff was able to perform her PRW as a deli worker. Tr. 34. Plaintiff argues that the ALJ first erred at this step by determining that plaintiff's PRW was at the light work level. Plaintiff then argues that the ALJ asked the VE a "truncated" hypothetical question during the hearing, which failed to include all of plaintiff's medical limitations, resulting in an inaccurate RFC. Pl.'s Mem. at 17. Regardless, plaintiff maintains that she is unable to sustain any SGA - at the medium, light, or sedentary levels - due to her limitations.

At the administrative hearing, plaintiff testified that she needs to sit and elevate her legs due to her osteoarthritis, osteopenia, fibromyalgia, and CFS, all of which are exacerbated by her morbid obesity. Tr. 41-43. Plaintiff testified that her constant pain forced her to take frequent breaks to elevate her legs approximately "twenty times" a day, for an "[h]our, hour and a half at each sitting." Tr. 44. These frequent, unscheduled breaks, plaintiff argues, would render her unable to sustain any gainful employment. Pl.'s Mem. at 19. The VE testified that if accepted as true, these frequent, unscheduled breaks "would preclude all jobs." Tr. 50-51.

Given that the ALJ did not commit legal error in his consideration of plaintiff's testimony and the medical evidence, however, I find no error at this step. The ALJ may limit his hypothetical question to those limitations that he "found credible and supported by substantial evidence in the record." Bayliss v.

16   - OPINION AND ORDER

Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). Here, the ALJ properly based his hypothetical on plaintiff's severe impairments determined at step two. As the ALJ concluded that severe pain and fatigue did not severely limit plaintiff's RFC, it was proper that the ALJ did not include them here.

In sum, this Court finds that the ALJ thoroughly reviewed the plaintiff's medical record and provided clear and convincing reasons for his findings, supported by substantial evidence in the record, throughout the five-step process.

CONCLUSION

For the reasons explained above, the ALJ's determination that plaintiff is not disabled under the Act is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

Dated this 22nd day of March, 2013.

_____
Ann Aiken
United States District Judge

17   - OPINION AND ORDER